UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 10-11185-JLT |
| | * | |
| TUCARD, LLC, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

September 15, 2010

TAURO, J.

I.   Introduction

The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed this action against Defendant, Tucard, LLC, to obtain Defendant's compliance with an EPA Administrative Order for access to Defendant's property.  Presently at issue is Plaintiff's Motion for an Order in Aid of Immediate Access [#4], pursuant to Section 104(e)(5) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA").[1]  For the following reasons, Plaintiff's Motion for an Order in Aid of Immediate Access [#4] is ALLOWED.

II.   Background

The undisputed facts are as follows:

Defendant Tucard, LLC owns property located at 100 Pleasant Street, Dracut, Massachusetts ("the Property") that is part of a complex of former mill buildings ("the Site").[2]

---

[1] 42 U.S.C. § 9604(e)(5).

[2] Compl., 3 [#1]; Answer, 2 [#8].

Beginning in February 2007, the Massachusetts Department of Environmental Protection ("MassDEP") issued Defendant a series of notices regarding the need for environmental response action at the Property.[3] Subsequently, EPA became involved at the Property. In October and December 2008, EPA and an EPA contractor sampled soils, groundwater, surface water, and suspected asbestos-containing material at the Site.[4] During this investigation, EPA and its contractor found several hazardous substances[5] in the soil and groundwater in concentrations in excess of criteria promulgated by EPA and/or the Commonwealth of Massachusetts.[6] EPA also found several abandoned fifty-five-gallon drums of hazardous substances in the basement of a building on the Property.[7]

Beginning a series of correspondence between EPA and Defendant, on August 3, 2009, EPA sent Defendant a Notice of Potential Liability, which included a request for access.[8] Among other things, the Notice advised Defendant that EPA planned to undertake a removal action at the Property and requested that Defendant grant EPA permission to enter the Property by signing an

---

[3] Compl., 4 [#1].

[4] Compl., 5 [#1].

[5] The hazardous substances were volatile organic compounds, tetrachloroethylene ("PCE") and trichloroethylene ("TCE"). PCE and TCE are both "hazardous substances" under Section 101(4) of CERCLA, 42 U.S.C. § 9601(14).

[6] Compl., 5–6 [#1].

[7] Compl., 6 [#1]. The drums contained Volatile Chlorinated Solvents, United States' Mot. Order Aid Immediate Acces, Ex. A, AR Doc. 8, Action Mem. [#4], which are a hazardous substance under section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

[8] United States' Mot. Order Aid Immediate Access, Ex. A, AR Doc. 9, Notice of Potential Liability [#4].

access agreement that was enclosed with the Notice.  In an August 14, 2009 letter, Defendant responded that EPA's proposed actions were unnecessary.[9]  The letter did not respond to EPA's request for access.

On September 9, 2009, EPA sent Defendant a letter requesting a response to the previous request for access and inviting Defendant to perform response actions as part of EPA's planned removal action.[10]  In an October 2, 2009 letter, Defendant stated that it wished to have further discussions with EPA and MassDEP prior to removal actions or signing access agreements because Defendant believed that EPA's proposed actions were unnecessary.[11]

On February 5, 2010, EPA sent Defendant a letter stating that Defendant had not agreed in good faith to perform the response actions selected by EPA and therefore EPA would perform the work itself.[12]  This letter repeated the request for access to the Site and again attached an agreement for consent to access.  On February 12, 2010, Defendant responded that it had determined that its own proposed actions were more important than the response actions proposed by EPA.[13]  Defendant again did not respond to the request for access.  On March 1, 2010, in a phone conversation with an EPA attorney, Defendant confirmed that it would not provide access.[14]

---

[9] Id. at Ex. A, AR Doc. 10, Letter [#4].

[10] Id. at Ex. A, AR Doc. 11, Letter [#4].

[11] Id. at Ex. A, AR Doc. 12, Letter [#4].

[12] Id. at Ex. A, AR Doc. 16, Letter [#4].

[13] Id. at Ex. A, AR Doc. 17, Letter [#4].

[14] Compl., 8 [#1].

3

On March 26, 2010, EPA issued an Action Memorandum that described EPA's plan for the performance of a removal action at the Property.[15] The Action Memorandum required additional sampling, removal of various hazardous materials, and other clean-up.

On April 6, 2010, EPA issued an Administrative Order,[16] pursuant to CERCLA § 104(e)(5)(A),[17] to Defendant. The Administrative Order requires Defendant to provide EPA and its officers, employees, agents, contractors, and other representatives full and unrestricted access at all reasonable times to the Property, "for the purpose of conducting response activities, including but not limited to performing the removal action" described in the Action Memorandum.[18]

EPA and Defendant convened at EPA's Boston office on April 28, 2010 to discuss the Administrative Order.[19] At that conference, Defendant stated that it would not allow entry for purposes of performing the removal action before EPA completed additional soil samples to determine the full extent of the contamination at the Site. EPA informed Defendant that Defendant had until April 30, 2010 to agree to comply with the Administrative Order. EPA stated that at that point it would seek to enforce the Administrative Order in court.

---

[15] United States' Mot. Order Aid Immediate Access, Ex. A, AR Doc. 8, Action Mem. [#4].

[16] Id. at Ex. A, AR Doc. 19 [#4].

[17] 42 U.S.C. § 9604(e)(5)(A).

[18] Compl., 8 [#1].

[19] United States' Mot. Order Aid Immediate Access, Ex. A, AR Doc. 23, Mem. [#4].

The Administrative Order became effective on May 5, 2010.[20] EPA contends that Defendant has refused or failed to comply with the Administrative Order.

III.  Discussion

In its Motion for an Order in Aid of Immediate Access, Plaintiff requests immediate access to Defendant's property to conduct a removal action.  Plaintiff's grounds for relief are: (1) the United States is authorized under Section 104(e) of CERCLA[21] to enter the Property, but EPA has not been able to obtain access by consent of the owner of the Property; and (2) any delay in the performance of the selected removal action delays the clean-up of the Property and the Site and may also result in the continued release or threat of release of hazardous substances to the environment.

In opposition, Defendant contends that EPA's decision that access is necessary falls within the "arbitrary and capricious" standard.[22]  That is, Defendant contends that EPA does not address whether its request is reasonable, and that the request is therefore arbitrary and capricious.  Further, Defendant contends that the request is actually unreasonable because Defendant is conducting its own remedial actions.

As an initial matter, CERCLA authorizes EPA and its representatives to enter property to conduct a "response action"[23] if EPA determines that "there is a reasonable basis to believe there

---

[20] Compl., 9 [#1].

[21] 42 U.S.C. § 9604(e).

[22] See Administrative Procedure Act § 706(2)(A), 5 U.S.C. § 706(2)(A).

[23] CERCLA defines "response" as "remove, removal, remedy, and removal action" and "enforcement activities related thereto."  42 U.S.C. § 9601(25).

5

may be a release or threat of release of a hazardous substance or pollutant or contaminant."[24]   If EPA determines that grounds for entry exist, a court must enjoin any interference with EPA's entry to the property unless EPA's demand for entry is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."[25]

Moreover, section 113(h) of CERCLA[26] bars challenges to EPA-selected removal or remedial actions before those remedies have been completed.[27]   For this court to allow EPA access, therefore, EPA must satisfy only three prerequisites.  First, EPA must demonstrate that it is seeking access that is authorized under section 104(e)(3) of CERCLA.[28]   Second, EPA must have requested access from an authorized person.[29]   Third, EPA must show "a reasonable basis to believe there may be a release or threat of a release of a hazardous substance or pollutant or contaminant."[30]   EPA has satisfied these criteria here.

      A.      <u>EPA's Access Is Authorized Under CERCLA § 104(e)(3)</u>

Section 104(e)(3) of CERCLA authorizes EPA entry to any "vessel, facility,

---

[24] 42 U.S.C. § 9604(e)(1).

[25] <u>Id.</u> § 9604(e)(5)(B)(i).  Additionally, if EPA determines that grounds for entry exist, the agency's rights to entry and access are broad.  <u>See id.</u> § 9604(e)(3)(D) (authorizing EPA and its representatives to enter any "vessel, facility, establishment or other place or property where entry is needed to determine the need for response or the appropriate response or to effectuate a response action").

[26] <u>Id.</u> § 9613(h)

[27] <u>Id.</u> § 9613(h); <u>see</u> <u>United States v. Charles George Trucking Co.</u>, 682 F. Supp. 1260, 1272 (D. Mass. 1988).

[28] <u>See</u> 42 U.S.C. § 9604(e)(5)(A).

[29] <u>See id.</u>; <u>id.</u> § 9604(e)(5)(B)(i).

[30] <u>Id.</u> § 9604(e)(5)(B).

establishment, or other place or property" where

> any hazardous substance or pollutant or contaminant may be or has been generated, stored, treated, disposed of, or transported from. . . . [or] has been or may have been released. . . . [or] such release is or may be threatened. . . . [or] where entry is needed to determine the need for response or the appropriate response or to effectuate a response action.[31]

Here, the Administrative Record provides ample evidence that Defendant's property falls squarely within this broad provision of CERCLA. Namely, exposure to the hazardous substances identified by MassDEP and EPA at Defendant's property satisfies this provision.

### B.   EPA Requested Access from an Authorized Person

As demonstrated by the Administrative Record, EPA requested access to the Property from an authorized person. EPA communicated with Defendant via notices, letters, memoranda, and orders, and the agency held a conference to discuss the Administrative Order. As owner of the property, Defendant was authorized to allow EPA access.

### C.   EPA Has Shown a Reasonable Basis to Believe that There May Be a Release or Threat of a Release of a Hazardous Substance

EPA has demonstrated a "reasonable basis to believe there may be a release or a threat of a release of a hazardous substance."[32] As the Administrative Record documents, both MassDEP and EPA gathered evidence regarding a release of hazardous substances at the Site. These agencies found hazardous substances in the soil, water, and air.

Defendant argues in its Opposition that EPA's request for access is unreasonable. Defendant contends that because of actions that it is undertaking, "and future actions [Defendant]

---

[31] Id. § 9604(e)(3).

[32] Id. § 9604(e)(1), (5).

anticipates taking,"[33] EPA's request for access is unreasonable. Nothing in CERCLA, however, requires EPA to wait for a property owner to conduct remedial action of its own design, at its own pace.[34] Defendant cites United States v. Tarkowski[35] as its sole authority for the unreasonableness of EPA's actions. In stark contrast to Defendant's property, the property in Tarkowski contained no risk of environmental hazard.[36] Tarkowski is therefore irrelevant here.

### D. EPA's Decision Is Neither Arbitrary nor Capricious

Defendant contends that EPA's request for access was unreasonable and thus was arbitrary and capricious. Based on the Administrative Record,[37] this court is convinced that EPA made its request for access based on a plethora of information regarding an environmental threat at the Property. As noted above, the Administrative Record contains evidence of hazardous substances in the soil, groundwater, and air of Defendant's property. That evidence was compiled by both MassDEP and EPA and provided a sufficient basis for EPA to request access.

## IV. Conclusion

For the foregoing reasons, this court is persuaded that EPA's request for access was

---

[33] Opp'n of Tucard, LLC to Mot. Order Aid Immediate Access, 5 [#5].

[34] Defendant cites 42 U.S.C. § 9604(a)(1) for the proposition that "an owner or operator of a facility may carry out a response action, conduct the remedial investigation, or conduct a feasibility study." Opp'n of Tucard, LLC to Mot. Order Aid Immediate Access, 5 [#5]. CERCLA is clear, however, that it is in the discretion of the agency to allow such a delegation, if EPA has determined that "such action will be done properly and promptly by the owner or operator." Id. EPA made no such determination here.

[35] 248 F.3d 596 (7th Cir. 2001).

[36] Id. at 598.

[37] See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) (requiring arbitrary and capricious judicial review to take place on the basis of the administrative record).

reasonable.  Plaintiff's Motion for an Order in Aid of Immediate Access [#4] is, therefore,

ALLOWED.

AN ORDER HAS ISSUED.

                                                      /s/ Joseph L. Tauro  
                                                      United States District Judge